[No. D002107. Fourth Dist., Div. One. Apr. 8, 1986.]

BERNARD L. LEWIS, Individually and as Trustee, etc., et al.,
Plaintiffs and Respondents, v.
PRUDENTIAL-BACHE SECURITIES, INC., Defendant and Appellant.

COUNSEL

Keesal, Young & Logan, Terry Ross and David L. Wiggins for Defendant and Appellant.

Bernard L. Lewis, in pro. per., for Plaintiffs and Respondents.

OPINION

**WORK, J.**—Prudential-Bache Securities, Inc. (Prudential) appeals a denial of its petition to compel arbitration of Lewis' class action complaint alleging Prudential fraudulently calculated interest charges on the basis of a 360-day year on margin accounts. We reverse, holding the claims should be arbitrated in accordance with the terms of the contracts underlying each margin account and that certification as a class action will not render arbitration an unworkable forum.

## I

Bernard Lewis and the other named plaintiffs (jointly Lewis) maintained securities brokerage accounts in their individual names with Prudential, beginning in approximately February 1978. Between 1978 and 1979, the plaintiffs separately executed Prudential standard customer agreements to open margin accounts with Prudential. These identical agreements included a clause providing: "Any controversy arising out of or relating to my account, to transactions with or for me or to this Agreement or the breach thereof . . . shall be settled by arbitration in accordance with the rules then obtaining of either the American Arbitration Association or the Board of Governors of the New York Stock Exchange as I may elect. If I do not make such election . . . within five (5) days after demand by you that I make such election, then you may make such election."

Lewis' class action alleges Prudential fraudulently charged excessive interest to its customers by calculating interest charges on the basis of a 360-day year, thus increasing the interest rates charged by $1/73$ of the rate shown and overcharging the class members more than $500,000 per year. He charges Prudential deliberately concealed the higher interest rate in the monthly statements by showing interest charges in terms of an "average daily balance." Lewis also claims Prudential charged customers a fee of $1.25 to $2.50 on each transaction, fraudulently representing the charge as a tax or exchange fee where none was required, and that Prudential's conduct was a prohibited unfair trade practice. (Bus. & Prof. Code, § 17500.)

Prudential asked Lewis to choose an arbitration forum pursuant to the customer agreement. Lewis declined and Prudential elected to be governed by rules adopted by the New York Stock Exchange (NYSE). Prudential demurred and petitioned to compel arbitration.

The trial court overruled the demurrer and denied the petition, reasoning this type of customer adhesion agreement is disfavored in California, and the 360-day interest year violates California public policy. It found the combination of public policy considerations and the adhesive status of the arbitration agreement supports not enforcing the arbitration clause.

## II

Prudential contends the Federal Arbitration Act and federal case law preempt the field and mandate arbitration, and therefore state law principles regarding adhesion contracts and public policy are irrelevant. Alternatively, Prudential argues the arbitration clause is enforceable under California law,

and there is no unconscionability or fraud in the inducement impeding enforcement of the arbitration clause.

Lewis claims both federal and state law recognize arbitration is an inappropriate forum for certain types of cases, such as this, having important public policy implications and an arbitrator cannot exercise sufficiently broad powers to adequately address the unfair trade practices and public policy issues in this action. In addition, Lewis contends the arbitration clause is unconscionable and that Prudential, by demurring to the complaint, waived its right to arbitration.

## III

At the outset we dispose of the claim Prudential waived its right to arbitration by filing a demurrer as well as a petition to compel arbitration. The right to arbitration can be waived, only by choosing to litigate *without attempting to enforce arbitration.* In *Keating* v. *Superior Court* (1982) 31 Cal.3d 584 [183 Cal.Rptr. 360, 645 P.2d 1192], reversed on other grounds *sub nom. Southland Corp.* v. *Keating* (1984) 465 U.S. 1 [79 L.Ed.2d 1, 104 S.Ct. 852], the franchisor was held not to have waived its right to arbitration, although it had filed counterclaims and actions for unlawful detainer and participated in discovery, because it had raised arbitration as an affirmative defense in its answers to the original complaints. Similarly, Prudential responded to the original complaint by demanding the members of the class elect an arbitrator, and then filed both a petition to compel and a demurrer.

## IV

The arbitration clause is also not invalidated by other allegedly invalid statements in the paragraph containing the arbitration clause. If a contract has several distinct objects, of which one at least is lawful, the contract is valid and enforceable as to the lawful object provided it is clearly severable from the rest. (Civ. Code, § 1599.) The arbitration clause here is severable from the allegedly illegal statements in this paragraph and is therefore enforceable.

## V

Here the arbitration clause is part of a contract evidencing commerce and thus within the ambit of the Federal Arbitration Act. The Federal Arbitration Act, 9 United States Code section 2 provides: A written provision for arbitration in a "contract evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds

as exist at law or in equity for the revocation of any contract." The act has been interpreted by the United States Supreme Court as "a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." (*Moses H. Cone Hospital* v. *Mercury Constr. Corp.* (1983) 460 U.S. 1, 24 [74 L.Ed.2d 765, 785, 103 S.Ct. 927, 941].) ■ The act creates "a body of federal substantive law of arbitrability" applicable to any agreement within its coverage, and establishes "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration . . . ." (*Id.,* at pp. 24-25 [74 L.Ed.2d at p. 785, 103 S.Ct. at p. 941].) Thus, state laws invalidating arbitration agreements covered by the act violate the Supremacy Clause, article VI, clause 2 of the United States Constitution. (*Southland Corp.* v. *Keating, supra,* 465 U.S. 1 [79 L.Ed.2d 1, 104 S.Ct. 852].)

The Federal Arbitration Act was specifically applied to an arbitration clause in an adhesion contract between a brokerage firm and a securities customer in the recent case of *Dean Witter Reynolds Inc.* v. *Byrd* (1985) 470 U.S. 213 [84 L.Ed.2d 158, 105 S.Ct. 1238]. This case concerned a securities customer who brought suit after his $160,000 account declined by more than $100,000 over a six-month period, alleging violations of federal securities laws and pendent state law claims. The court found the Arbitration Act mandated that the district court compel arbitration of all arbitrable claims even though the result could be the inefficient maintenance of separate actions. The court held the act left "no place for the exercise of discretion by a district court . . . ." (*Id.,* at p. 218 [84 L.Ed.2d at p. 163, 105 S.Ct. at p. 1241].)

The court in *Dean Witter* did not discuss whether adhesion contracts should be subjected to close judicial scrutiny (*id.,* at p. 216, fn. 2 [84 L.Ed.2d at p. 162, 105 S.Ct. at p. 1240]), but Division Three of this court, in yet another case involving a brokerage firm adhesion contract, addressed the issue. (*Tonetti* v. *Shirley* (1985) 173 Cal.App.3d 1144 [219 Cal.Rptr. 616].) In *Tonetti,* the court reversed the trial court's refusal to compel arbitration of a dispute between a stockbroker and his employer, Kidder, Peabody, by the NYSE. The court found the weight of authority compelled it to conclude the act rendered state law principles regarding adhesion contracts and arbitration irrelevant. ■ Even under state law, the clause will be upheld unless it does not fall within the reasonable expectations of the parties, or is unconscionable. (*Graham* v. *Scissor-Tail, Inc.* (1981) 28 Cal.3d 807, 819-820 [171 Cal.Rptr. 604, 623 P.2d 165].)

## VI

■ ■ ■ ■ ■ Without specifically identifying one that is relevant, Lewis argues public policy requires removing this issue from the Federal

Arbitration Act and into a judicial forum.[1] The United States Supreme Court in *Dean Witter, supra,* 470 U.S. 213, 219 [84 L.Ed.2d 158, 164, 105 S.Ct. 1238, 1241] recognized past cases have identified a federal interest "sufficiently compelling" to outweigh the mandate of the Arbitration Act. Lewis contends the use of the 360-day year is an equivalent interest, analogizing it to arbitration in antitrust cases, which, because of "the public interest in enforcement of the antitrust laws," have been held to be "inappropriate subjects for arbitration . . . ." (*Hunt* v. *Mobil Oil* (S.D.N.Y. 1977) 444 F.Supp. 68, 69.) Lewis equates the California Unfair Trade Practice Law (Bus. & Prof. Code, §§ 17500 and 17535) to state antitrust law. This analogy is not apt.

In the leading case of *American Safety Equipment Corp.* v. *J. P. Maguire & Co.* (2d Cir. 1968) 391 F.2d 821 [3 A.L.R.Fed. 901], the Second Circuit stated the question in antitrust cases is whether the federal statutory right to be enforced is appropriate for an arbitration forum. It found antitrust laws were for public protection, not merely private, and that the national interest in a competitive economy is substantial. Further, the arbitration clause was not only contained in a contract of adhesion, the disputed claim to be resolved was whether the *contract itself* was a product of monopolistic overreaching in violation of federal antitrust laws. A secondary, practical concern was that "[a]ntitrust violations can affect hundreds of thousands—perhaps millions—of people and inflict staggering economic damage" and "the issues . . . are prone to be complicated, and the evidence extensive and diverse, far better suited to judicial than to arbitration procedures." (*Id.,* at pp. 826-827.) Here the issues are not complex, and the numbers involved are not cumbersome. Although the contract is adhesive, there is no contention that its other provisions violate any statute.

While the continued use by brokerage firms of the 360-day year may have important public policy implications, these concerns are not sufficient to override the mandate of the Arbitration Act. Arbitration clauses have been enforced under the act even when enforcement affected public policy. In *Dean Witter, supra,* 470 U.S. 213, 217 [84 L.Ed.2d 158, 163, 105 S.Ct. 1238, 1241], for example, the United States Supreme Court enforced an arbitration clause even though the result would be "the possibly inefficient maintenance of separate proceedings in different forums," thus conflicting

---

[1]It is well established that claims arising under the Securities Act of 1933 and Securities Exchange Act of 1934 are not arbitrable. (*Wilko* v. *Swan* (1953) 346 U.S. 427 [98 L.Ed. 168, 74 S.Ct. 182].) Lewis contends the claims here arise under federal securities laws and therefore are not arbitrable. Title 15 United States Code section 78aa, however, vests the district courts of the United States with exclusive jurisdiction over violations of the 1934 act or of any rules promulgated thereunder. However, the violations charged in Lewis' complaint do not fall within the 1934 act and are not exclusive to federal process. Thus, we do not reach this issue.

with the well-established policy favoring speedy and efficient resolution of claims.

## VII

Under the Federal Arbitration Act, an arbitration clause can be revoked on any legal or equitable ground that allows revocation of contracts, including unconscionability and fraud in the inducement. (9 U.S.C. § 2.) ■ Lewis contends the arbitration clause is void because the class members were "fraudulently induced" into signing the agreement by the nondisclosure of Prudential's unlawful trade practices. He further contends the arbitration clause is an intimate part of Prudential's fraudulent scheme to use the 360-day year.

The fraud alleged by Lewis is closely entwined with the issue of the 360-day interest year. Where no claim is made that the fraud was specifically directed at the arbitration clause, "a broad arbitration clause will be held to encompass arbitration of the claim that the contract itself was induced by fraud. [Fn. omitted.]" (*Prima Paint* v. *Flood & Conklin* (1967) 388 U.S. 395, 402 [18 L.Ed.2d 1270, 1276-1277, 87 S.Ct. 1801].) Lewis contends the arbitration clause is an intimate part of Prudential's scheme to defraud its customers but does not allege the fraud was specifically directed to the arbitration clause itself.

## VIII

■ Lewis next argues arbitration of this claim by rules promulgated by the securities industry would be unconscionable and the arbitration provision is therefore void. The customer agreement gave Lewis a choice of arbitration forums, either that created by the industry and adopted by the NYSE or the American Arbitration Association. When Lewis declined to elect, Prudential chose the NYSE. Lewis meritlessly contends that both parties are now bound by that choice, and if we reject it, we must deny arbitration altogether.

In recent cases, California courts have reached differing conclusions on whether forced investor arbitration under the rules of the NYSE is unconscionable. Lewis cites cases holding agreements to arbitrate disputes with a NYSE member before a NYSE arbitrator were unenforceable. (*Richards* v. *Merrill Lynch, Pierce Fenner & Smith, Inc.* (1976) 64 Cal.App.3d 899, 903-906 [135 Cal.Rptr. 26]; *Hope* v. *Superior Court* (1981) 122 Cal.App.3d 147, 154 [175 Cal.Rptr. 851].) In *Hope,* the court found arbitration by the NYSE was unconscionable because "there exists a presumptive *institutional* bias in favor of . . . members," and the NYSE arbitration procedures failed

"to meet minimal levels of integrity." (*Id.*, at pp. 154-155.) In contrast, in *Parr* v. *Superior Court* (1983) 139 Cal.App.3d 440 [188 Cal.Rptr. 801], a case relied on by Prudential, the court approved the presumptive bias test but found the NYSE had effectively rebutted the presumption of unconscionability; citing the right to a panel of arbitrators, a majority of whom must be from outside the securities industry; the right to one peremptory challenge; the right to a hearing; the right to present evidence; the right to counsel; and the right to a verbatim record. (*Id.*, at p. 447.)

More recently a court of appeal rejected the rule of *Hope* believing it was compelled to do so by federal cases holding the NYSE's arbitration procedures to be fair and enforceable. (*Tonetti* v. *Shirley & Kidder, Peabody & Co., Inc., supra,* 173 Cal.App.3d 1144, citing *Drayer* v. *Krasner* (2d Cir. 1978) 572 F.2d 348, 359; *Pelzman* v. *Paine, Webber, Jackson & Curtis, Inc.* [1983-1984 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶ 99408 (D.D.C. 1983).) Finding the presumptive bias test inappropriate, the court held Tonetti had the burden of showing actual bias in the operation of the arbitration procedures and remanded to the trial court for a determination of that issue under federal law.

There is a difference. In *Tonetti,* the conflict is only between one disgruntled stockbroker employee and the employing brokerage firm. Here, the claim to be arbitrated strikes at the general practice of securities brokerage firms toward the unsophisticated and sophisticated investor alike, an issue of such widespread concern as to raise legitimate doubts as to the probable institutional bias of the NYSE selected arbitration panel. The uncontradicted evidence in the trial record shows "all known" members of the NYSE use the 360-day year and its arbiters are all selected by a director of arbitration appointed by, and under a plan developed by, the securities industry.[2] That the director, appointed by an industry whose every member's general business practice is being challenged as fraudulent, can disinterestedly select arbiters to decide an issue which will affect them all, is suspect for fairness.[3]

Unlike the situation in *Parr* v. *Superior Court, supra,* 139 Cal.App.3d 440, *Tonetti,* and the cited federal cases (except *Southland Corp.* v. *Keating, supra,* 465 U.S. 1 [79 L.Ed.2d 1, 104 S.Ct. 852], in which the issue is not addressed) the potential industry-wide ramifications of the disputes to be resolved impact the issue of whether the procedure meets the level of integ-

---

[2]The director of arbitration shall appoint five arbitrators, two of which may be from the securities industry, subject to disclosure of information regarding impartiality and to one peremptory challenge from each side. (The class here constitutes one party for this purpose.)

[3]Prudential flatly states it has "long been within the top five national brokerage houses in the country in terms of sales and number of customers." Further, that it has been similarly conducting its business "for decades."

rity requisite to withstand a challenge of unconscionability. We hold it does not on this record which contains the policies and procedures under which the NYSE panel was created and operates.

We need not remand for selection of an alternative arbiter, for Prudential is deemed to be satisfied with the alternative arbiter it designated in its contracts, the American Arbitration Association, although it obviously prefers another. We can conceive of no possible challenge Lewis can legitimately raise to this impartial alternate arbiter, although he would prefer none at all.

IX

Lewis has not responded to an issue alluded to by Prudential: whether this dispute can be meaningfully arbitrated as a class action. In *Southland Corp.* v. *Keating, supra,* 465 U.S. 1 [79 L.Ed.2d 1, 104 S.Ct. 852], the Supreme Court remanded the case to the state courts without deciding whether the Federal Arbitration Act precluded class actions. The court recognized, however, that arbitrability of class actions had been thoroughly discussed and approved in principle by the California Supreme Court and the matter remanded to the trial court to determine whether the required overlay of class certification procedures was so burdensome as to prevent the structuring of arbitration to accommodate it. (*Keating* v. *Superior Court, supra,* 31 Cal.3d 584, 613-614.) A classwide arbitration will require judicial involvement regarding certification of the class and notice to its members. In the event of settlement or dismissal, the court must be prepared to safeguard the interests of the absent class members. Because the trial court had not considered whether a classwide arbitration was feasible in *Keating,* the California Supreme Court remanded with instructions to consider that issue in light of relevant factors. (*Id.,* at p. 614.)

Here, the trial court was presented with Prudential's argument that classwide arbitration was appropriate if not precluded because of factors referred to by the California Supreme Court in *Keating.* Lewis did not contest Prudential's position at the trial court, nor does he now.

Although Prudential argues against denying arbitration merely because Lewis has brought a class action, it does not concede *this* action is appropriate for arbitration as a class action.[4] It implies its preference for the trial court determining Lewis must bring his *individual* claims by way of arbi-

---

[4]Prudential only states it is "willing to investigate the *possibilities* with Lewis and the trial court regarding a classwide arbitration." (Italics added.)

tration because the procedural complexities of the class action aspects would defeat the benefits of arbitration.

The alternative to class arbitration here is to force each Prudential customer to individually arbitrate claims, most of which probably cannot justify the time and money required to prove. This case appears to offer no great difficulty in adapting arbitration to fit the class action mold, with adequate judicial supervision over the class aspects. In *Keating,* the court suggests the fact that *hundreds* of franchisees would be forced to separately arbitrate if class arbitration were denied could be deemed so grossly unfair as to justify structuring arbitration on a class basis in spite of the difficulty it may present. Here, Prudential suggests the number may be in the *hundreds of thousands.*

There appear to be no factors hindering class arbitration of this dispute. The interests of Prudential, who drafted the adhesion contract, are not alleged to be unfairly prejudiced by such a procedure, and it does not suggest how the court's supervision over the class aspects will render the arbitration unmanageable or impractical.

*Disposition:*

The order denying arbitration is reversed. The superior court shall appoint the American Arbitration Association to arbitrate this matter. Further, it shall make such determinations as are necessary to certify the class and provide proper notices. If the class is certified, the court shall retain such supervisory jurisdiction as is necessary to safeguard the interests of the absent class members.

Staniforth, Acting P. J., and Mitchell, J.,* concurred.

---

*Assigned by the Chairperson of the Judicial Council.