[No. D006570. Fourth Dist., Div. One. June 29, 1988.]

THOMAS L. DOWNS, Plaintiff and Respondent, v. PRUDENTIAL-BACHE SECURITIES, INC., Defendant and Appellant.

**COUNSEL**

Geraldine Darrow, Timothy N. Will and Keesal, Young & Logan for Defendant and Appellant.

Paul Newberry for Plaintiff and Respondent.

**OPINION**

**BENKE, J.—**

### SUMMARY

Plaintiff Thomas L. Downs went to work for Prudential-Bache Securities, Inc. (Prudential-Bache), in December 1983. He signed an application and an employment agreement, both of which provide for arbitration of any disputes he might have with Prudential-Bache. The employment agreement requires arbitration under the rules of the New York Stock Exchange (NYSE); in the event the stock exchange declines to hear the matter, arbitration is required under the rules of the American Arbitration Association.

According to Downs's complaint in September 1986, a dispute arose over trading Downs had performed for one of his clients, the Titus trust. Downs alleges that Prudential-Bache paid the trust $251,000 in losses the trust had incurred and in return received an assignment of the trust's claims against Downs. Downs further alleges that Prudential-Bache planned to take its claims against him to arbitration before the NYSE. Downs also alleges that Prudential-Bache wrongfully terminated his employment.

In response to Downs's complaint, Prudential-Bache moved for an order compelling arbitration of his claims before the NYSE, staying the superior

court action and consolidating arbitration of Downs's claims with an arbitration claim Prudential-Bache had previously filed with the stock exchange.

Downs opposed Prudential-Bache's motion and asked the superior court for leave to file an amended complaint and for an injunction preventing Prudential-Bache from proceeding with its pending arbitration. The amended complaint alleges Prudential-Bache induced Downs's employment by paying him $65,739 in advance, requiring him to sign a promissory note for that amount, and then falsely representing that it would not enforce the note. He alleges this promise was part of an industrywide practice of recruiting of employees of competing firms by paying disguised bonuses for proprietary customer information.

The superior court denied Prudential-Bache's motions and Downs's request for an injunction and granted Downs leave to amend his complaint. Prudential-Bache appeals from that portion of the superior court's order which denied the motion to compel arbitration and for a stay.

### ISSUE ON APPEAL

Prudential-Bache argues the predominant federal interest in allowing arbitration of disputes overcomes any interest Downs may have in resolving his claims in a court of law. We agree. We remand so that the trial court may consider whether the NYSE is an impartial forum.

### DISCUSSION

The employment agreement Downs signed provides:[1] "Any claim or controversy arising out of or respecting any matter contained in this agreement, or any difference as to the interpretation of any of the provisions of this agreement, shall be settled by arbitration in New York City under the then prevailing Constitution and Rules of the New

---

[1] Prudential-Bache also relies upon Downs's application in which he indicated in response to question 8 that he desired registration with the National Association of Securities Dealers (NASD). In response to another question, Downs asked to act as a "general securities representative" and to obtain the "full registration" necessary to do so. Still another part of the application requires arbitration of disputes under the rules of any of the bodies mentioned in response to question 8. Prudential-Bache argues that since "full registration" includes the NYSE, Downs agreed to exchange arbitration by signing the application. We disagree. The arbitration portion of the application refers only to question 8. Downs's response to question 8 refers only to the NASD. If Prudential-Bache meant to require NYSE arbitration of all its applicants, its form is not the unambiguous mechanism required to do so. (See *Chan* v. *Drexel Burnham Lambert, Inc.* (1986) 178 Cal.App.3d 632, 643-644 [223 Cal.Rptr. 838].)

York Stock Exchange, Inc. In the event such Exchange shall decline to accept jurisdiction of such controversy, such claim shall be settled by arbitration in accordance with the Rules of the American Arbitration Association."

The parties agree that this provision is governed by the Federal Arbitration Act (the Act). (9 U.S.C. § 2.) Nonetheless, as in the superior court Downs argues this provision is not enforceable because it was induced by fraud, imposed upon him by Prudential-Bache and requires arbitration before a presumptively biased body. We reject each of Downs's arguments.

## I

### Fraud in the Inducement

█ Downs argues Prudential-Bache's false promise to forego enforcement of the $65,739 note is not arbitrable and that if he is successful in pursuing that claim he will be entitled to rsecind the entire agreement including the arbitration clause. █ However in *Lewis* v. Prudential-Bache Securities, Inc. (1986) 179 Cal.App.3d 935, 943 [225 Cal.Rptr. 69], this court rejected a similar argument. "Where no claim is made that the fraud was specifically directed at the arbitration clause, 'a broad arbitration clause will be held to encompass arbitration of the cliam that the contract itself was induced by fraud. [Fn. omitted.]' (*Prima Paint* v. Flood & Conklin (1967) 388 U.S. 395, 402 [18 L.Ed.2d 1270, 87 S.Ct. 1801] ....)"

█ Here, as in *Lewis,* the fraud Downs has alleged was not specifically directed at the arbitration clause. Accordingly it too is arbitable and the premise of Downs's argument must fail.

Although Downs relies upon *Ford* v. *Shearson Lehman American Express, Inc.* (1986) 180 Cal.App.3d 1011, 1018-1019 [225 Cal.Rptr. 895], for the proposition that fraud which "permeates" a contract is not arbitable, this is not a case where the doctrine of permeation applies. As the court in *Ericksen, Arbuthnot, McCarthy, Kearney & Walsh Inc.* v. *100 Oak Street* (1983) 35 Cal.3d 312, 323, footnote 8 [197 Cal.Rptr. 581, 673 P.2d 251], explained: "The permeation doctrine is inapplicable here because, '[c]ertainly this is not a case ... where the defendant denied ever agreeing to anything.' " Here, Downs, unlike the plaintiff in *Ford,* has never claimed he did not know about or understand the agreement he was making. His complaint is that Prudential-Bache never intended to perform on its promise. His "disappointed expectation" concerning Prudential-Bache's performance does not give rise to any exception to the general rule set forth in

*Lewis.* (See *Ford* v. *Shearson Lehman American Express, Inc., supra,* 180 Cal.App.3d at p. 1022.)

## II

### ADHESION AND BIAS

In arguing that the arbitration provision is not enforceable because it was imposed upon him by Prudential-Bache and requires arbitration before a biased body, Downs relies upon *Hope* v. *Superior Court* (1981) 122 Cal.App.3d 147, 154 [175 Cal.Rptr. 851]. In *Hope* the court, relying upon *Graham* v. *Scissor-Tail, Inc.* (1981) 28 Cal.3d 807 [171Cal.Rptr. 604, 623 P.2d 165], held that arbitration provisions which are set forth in adhesive contracts will not be enforced if arbitration would be unconscionable. In *Hope* the court found unconscionability in a standard employment contract which required that claims against a stock brokerage company be arbitrated under the rules of the NYSE. The *Hope* court found this provision unconscionable because it believed the stock exchange was presumptively biased in the company's favor.

The analysis advanced by the court in *Hope* has not been widely accepted. (See *Tonetti* v. *Shirley* (1985) 173 Cal.App.3d 1144, 1146-1148 [219 Cal.Rptr. 616]; *Chan* v. *Drexel Burnham Lambert, Inc, supra,* 178 Cal.App.3d at pp. 638-639.) The *Tonetti* court found *Hope* inconsistent with *Southland Corp.* Keating (1984) 465 U.S. 1 [79 L.Ed.2d 1, 104 S.Ct. 852]; *Moses H. Cone Hospital* v. *Mercury Constr. Corp.* (1983) 460 U.S. 1 [74 L.Ed.2d 765, 103 S.Ct. 927].) In those cases the Supreme Court held that the Act articulates a federal policy which preempts substantive and procedural state rules. Thus, unlike the *Hope* court, the *Tonetti* court found that "California adhesion contract principles are inapplicable to the enforcement of an arbitration clause in a contract governed by the Act." (*Tonetti* v. *Shirley, supra,* 173 Cal.App.3d at p. 1148.) In *Lewis* v. *Prudential-Bache Securities, supra,* 179 Cal.App.3d at p. 940, this court largely adopted the approach suggested in *Tonetti.* In *Lewis,* a customer alleged that the defendant's use of a 360-day year in calculating interest charges was fraudulent. Finding the customer's claim was arbitrable the *Lewis* court held that adhesiveness alone will not overcome the strong federal policy in favor of arbitration. (*Id.* at pp. 941-943.) Like the courts in *Tonetti, Chan,* and *Lewis,* we do not believe any adhesiveness in Downs's employment contract prevents enforcement of the arbitration provision.

The *Tonetti* court also found that under applicable federal law an employment contract which requires arbitration before the NYSE is fair. Contrary to the holding in *Hope,* in *Tonetti* the court found no presumption of

bias; rather along with federal cases which had considered the issue, the *Tonetti* court required that a party resisting stock exchange arbitration show "actual bias in the operation of the arbitration procedures." (*Tonetti* v. *Shirley, supra,* 173 Cal.App.3d at p. 1140; see also *Drayer* v. *Krasner* (2d. Cir. 1978) 572 F.2d 348, 359; *Pelzman* v. *Paine, Webber, Jackson & Curtis, Inc.* (D.D.C. 1983) (CCH) Fed. Sec. L. Rep. 99408.)

Although the *Lewis* court was willing to presume stock exchange bias in the dispute before it, in explaining this departure from *Tonetti* the court said: "In *Tonetti, the conflict is only between one disgruntled stockbroker employee and the employing brokerage firm.* Here, the claim to be arbitrated atrikes at the general practice of securities brokerage firms toward the unsophisticated and sophisticated investor alike, an issue of such widespread concern as to raise legitimate doubts as to the probable institutional bias of NYSE selected arbitration panel. The uncontradicted evidence in the trial record shows 'all known' members of the NYSE use the 360-day year and its arbiters are all selected by a director of arbitration appointed by, and under a plan developed by, the securities industry. That the director, appointed by an industry whose every member's general business practice is being challenged as fraudulent, can disinterestedly select arbiters to decide an issue which will affect them all, is suspect for fairness." (*Lewis* v. *Prudential-Bache Securities, Inc., supra,* 179 Cal.App.3d 935, 944, fns. omitted, italics added.)

As in *Tonetti,* in this case we are confronted with a claim by a single employee against a single employer. Although Downs argues that the presumptive bias found in *Lewis* should apply nonetheless beacause his claim involves an industrywide proctice of paying employees of competing firms large disguised bonuses in exchange for proprietary information, this alleged misconduct is not the one-sided proposition discussed in *Lewis.* Even accepting the truth of Downs's allegations, at least one member firm of the exchange will always be damaged when the scheme Downs alleges has taken place. Unlike the situation in *Lewis* where every member firm would lose by accepting the plaintiff's interest rate arguments, in this case Prudential-Bache's competitors in the exchange *could* benefit by punishing conduct designed to harm their interests. In short in this case there is a diversity of interest among members of the exchange which did not exist in *Lewis.* Accordingly, unlike *Lewis,* the facts here do not support a presumption of bias. In order to defeat arbitration under exchange rules, Downs must show "actual bias in the operation of the arbitration procedures." )*Tonetti* v. Shirley, supra, 173 Cal.App.3d at p. 1150.)

As in *Tonetti,* the superior court did not receive any evidence of the NYSE procedures which would govern Downs's arbitration. Although in

his opposition to Prudential-Bache's motion Downs made reference to exchange rules which might limit his peremptory challenges, such limitations on his ability to effect the composition of the arbitral tribunal will not, standing alone, support a claim of actual bias. (See *Drayer* v. *Krasner, supra,* 572 F.2d at p. 359.) Thus, as in *Tonetti,* this case must be remanded so that any unfairness in exchange procedures may be determined.

## CONCLUSION

Although those portions of the superior court's order denying Prudential-Bache's motion to compel arbitration and for a stay must be reversed, we remand so that Downs may, if he wishes, present evidence of actual bias in the operation of the NYSE arbitration procedures. (*Tonetti* v. *Shirley, supra,* 173 Cal.App.3d at pp. 1150-1151.) In the event actual bias is found, we note that under the provisions of the employment contract and Code of Civil Procedure section 1281.6, Prudential-Bache would nonetheless be entitled to arbitration under the Rules of the American Arbitration Association. (See *Lewis* v. Prudential-Bache Securities, Inc., supra, 179 Cal.App.3d 935, 945.)

Those portions of the superior court's order appealed from are reversed. The matter is remanded to the superior court for further proceedings consistent with this opinion.

Work, Acting P.J., and Todd, J., concurred.