[No. A046051. First Dist., Div. Five. Mar. 26, 1990.]

J. ROBERT HALL, Plaintiff and Appellant, v.
NOMURA SECURITIES INTERNATIONAL et al., Defendants and
Respondents.

**COUNSEL**

James Paul Green for Plaintiff and Appellant.

Robert A. Dolinko, Benjamin P. Klatsky and Epstein, Becker, Stromberg & Green for Defendants and Respondents.

## OPINION

**HANING, J.**—Plaintiff/appellant J. Robert Hall appeals a judgment of dismissal after the trial court sustained without leave to amend the demurrer of defendants/respondents Nomura Securities International et al.,[1] to appellant's complaint for wrongful termination and intentional and negligent interference with prospective economic advantage.

■ "In reviewing the sufficiency of a complaint against a general demurrer, we are guided by long-settled rules. We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. We also consider matters which may be judicially noticed. Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. The burden of proving such reasonable possibility is squarely on the plaintiff." (*Blank* v. *Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58]; citations and internal quotations omitted.)

### FACTS AND PROCEDURAL HISTORY

When appellant was 49 years old he obtained employment with respondents. For 14 years prior to his employment with respondents he had been employed as a registered representative with the securities industry and, more particularly, an institutional bond salesman. During that time he developed a successful and consistent "book of business." He intended to complete his career with respondents, not retiring until at least age 65. Respondents fully understood and acknowledged in writing that their employment and personnel practices were in conformity with state and federal law, and that they did not discriminate on any prohibited basis, including age and physical handicap. Pursuant to a written agreement with respondent Nomura, appellant was entitled to compensation from sales to designated clientele at predetermined rates. While employed, appellant successfully developed additional business. Respondents Kurokawa, Honda, and Lomax were aware of this arrangement and appellant's probable future economic benefit from it.

Sometime before his 60th birthday appellant required coronary bypass surgery, which disabled him for a time physically but from which he

---

[1] Other named defendants and respondents are Masaaki Kurokawa, Masanori Honda, and Stanley Lomax.

recovered without injury, loss or diminution of time, services and/or ability to serve his clients or to develop business. Shortly after his 60th birthday respondents terminated his employment due to his age and medical condition, and for the purpose of assigning his clientele, accounts and book of business to younger employees, in violation of Government Code section 12940, which makes refusal to employ a person because of age or physical handicap an unlawful employment practice. Prior to appellant's termination respondents Kurokawa, Honda, and Lomax commenced a course of conduct designed to interfere with his employment, with the result that appellant's existing clientele were diverted to third parties. Their conduct caused the termination of his economic relationship with Nomura, including potential loss of income, to age 65, in excess of $1 million.

After appellant filed his complaint, respondents petitioned for arbitration on the ground appellant was contractually bound to arbitrate employment disputes and had refused to do so. Respondents' petition was based on a "Uniform Application for Securities Industry Registration Form U-4 1/81" executed by appellant while employed by respondent. It contains a clause by which appellant agreed "to arbitrate any dispute, claim or controversy that may arise between me and my firm . . . that is required to be arbitrated under the rules, constitutions, or by-laws of the organizations with which I register . . . ." Appellant was registered with the New York Stock Exchange, whose rule provides that "[a]ny controversy between a registered representative and any member or member organization arising out of the employment or termination [of] employment of such registered representative by and with such member or member organization shall be settled by arbitration, at the instance of such party, in accordance with the arbitration procedure proscribed [*sic*] elsewhere in these rules."

Respondents also based their petition on a commodities industry registration form, executed by appellant. On the form, under a boxed warning in upper case bold type, is a clause providing that the applicant agrees "to abide by the Statutes(s), Constitution(s), Rules and By-Laws as any of the foregoing are amended from time to time of the agency, jurisdiction or organization with or to which I am filing or submitting this application . . . ." By his application, appellant was seeking registration with the National Association of Securities Dealers (NASD). NASD's Code of Arbitration Procedure, adopted pursuant to its bylaws, mandates arbitration of any *dispute between members arising in connection with the members' business,* at the insistence of a member against another member.

Respondents simultaneously demurred to appellant's complaint on the grounds, inter alia, that he was limited to his arbitration remedies. The trial court granted respondents' petition to compel arbitration and sustained

their demurrer without leave to amend on the ground appellant was bound to arbitrate.

## DISCUSSION

Appellant's principal contention is that because his cause of action is statutorily based, he is not bound by the arbitration agreement. Section 2 of the Federal Arbitration Act (9 U.S.C. § 2, hereafter the Act) provides, in pertinent part, that a "written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, . . . shall be valid, irrevocable and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." Appellant does not dispute that the parties are involved in commerce. (U.S. Const., art. I, § 8, cl. (3).) ■ The "preeminent concern of Congress in passing the Act was to enforce private agreements into which parties had entered . . . ." (*Dean Witter Reynolds Inc.* v. *Byrd* (1985) 470 U.S. 213, 221 [84 L.Ed.2d 158, 165, 105 S.Ct. 1238].) Such agreements must be "rigorously enforced." (*Ibid.*)

The Act is a "congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary. The effect of [the Act] is to create a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act. . . . [The Act] establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration . . . ." (*Moses H. Cone Hospital* v. *Mercury Constr. Corp.* (1983) 460 U.S. 1, 24-25 [74 L.Ed.2d 765, 785, 103 S.Ct. 927].) The Act is enforceable in state as well as federal courts (*id.*, at p. 25 [74 L.Ed.2d at pp. 785-786]), and it preempts state laws precluding arbitration of claims. By its enactment "Congress declared a national policy favoring arbitration and withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration. . . . Congress intended to foreclose state legislative attempts to undercut the enforceability of arbitration . . . We see nothing in the Act indicating that the broad principle of enforceability is subject to any additional limitations under state law." (*Southland Corp.* v. *Keating* (1984) 465 U.S. 1, 10-11, 16 [79 L.Ed.2d 1, 12, 15, 104 S.Ct. 852].)

The United States Supreme Court has specifically applied this rule to the instant arbitration clause. In *Perry* v. *Thomas* (1987) 482 U.S. 483 [96 L.Ed.2d 426, 107 S.Ct. 2520] the plaintiff had signed an agreement identical to the one at issue herein as a condition to employment at a brokerage house. Following separation from the company, the plaintiff brought an action in the superior court against his employer to recover unpaid

commissions. He contended that California Labor Code section 229, which states that an action for collection of due and unpaid wages may be maintained regardless of any private agreement to arbitrate, permitted his action despite the arbitration agreement. *Perry* held that the Act preempted Labor Code section 229.

Citing federal law, appellant argues that claims brought under state antidiscrimination statutes constitute an exception to the rule of *Southland* and *Perry*. The United States Supreme Court has held that the presumption of arbitrability under the Act is defeated if overridden by an express Congressional intent to the contrary in another *federal* statute. (See *Shearson/American Express Inc.* v. *McMahon* (1987) 482 U.S. 220, 226 [96 L.Ed.2d 185, 193-194, 107 S.Ct. 2332]; *Mitsubishi Motors* v. *Soler Chrysler-Plymouth* (1985) 473 U.S. 614, 627 [87 L.Ed.2d 444, 455-456, 105 S.Ct. 3346].) Such intent has been found in the Employee Retirement Income Security Act (29 U.S.C. § 1001 et seq.), the Fair Labor Standards Act (29 U.S.C. § 201 et seq.), 42 United States Code section 1983, title VII of the 1964 Civil Rights Act (42 U.S.C. § 2000e et seq.), and the Age Discrimination in Employment Act of 1967 (ADEA). (29 U.S.C. § 621 et seq.; see *Nicholson* v. *CPC Intern. Inc.* (3d Cir. 1989) 877 F.2d 221, 224.)

Federal cases have upheld exemptions for state-based sex and race discrimination claims, but not for claims of age discrimination. *Steck* v. *Smith Barney, Harris Upham & Co., Inc.* (D.N.J. 1987) 661 F.Supp. 543 held that claims of age discrimination based on state law are governed by the Act. *Steck* involved an action for age discrimination by a terminated stockbroker. He brought an action under the ADEA and New Jersey's antidiscrimination law, which was modeled after title VII. Although he was allowed to proceed in court with his ADEA claim, he was ordered to arbitrate his state claim. "[The United States] Supreme Court has made clear that the Arbitration Act compels arbitration unless there is a countervailing Congressional interest expressed in another federal statute. Where as here, the statute in question is a state statute, such that no Congressional intent is involved, the Arbitration Act must be strictly enforced. [Citation.]" (*Id.*, at p. 548.)

Since *Swenson* v. *Management Recruiters Intern., Inc.* (8th Cir. 1988) 858 F.2d 1304 held that judicial enforcement of state employment discrimination claims based on sex and race is not precluded by the Act. In *Swenson,* the plaintiff brought an action for sex and race discrimination in violation of Minnesota's Human Rights Act. The Eighth Circuit concluded "that Congress has articulated an intent through the text and legislative history of Title VII [which deals with race and gender but not age discrimination] to preclude waiver of judicial remedies for violation of both federal Title VII rights and parallel state statutory rights, thereby exempting state statutes from the provisions of the [Act]. We emphasize that we reach this holding

based upon the legislative history and congressional intent manifested by Congress in passing Title VII. The intent of the state legislature in passing the Minnesota Human Rights Act [citation] is not relevant to our holding. [Citations.]" (*Id.*, at p. 1309.)

*Swenson* noted that, although *Steck* had likened an ADEA claim to a title VII claim, ADEA was not a part of title VII. While it was aimed at a form of discrimination, ADEA "does not contain the same recognition of state procedural remedies as does Title VII in dealing with race and gender discrimination claims. . . . Suffice it to say there are many substantive and procedural differences in the provisions of Title VII and the ADEA. Title VII makes clear [that] state procedures must be invoked as a prerequisite to a filing of a Title VII claim. The ADEA does not have a similar requirement. Under the ADEA, 29 U.S.C. § 633(a) (1982), it is provided that 'upon commencement of action under this chapter such action shall supersede any State action' whereas Title VII contains no such limitation. Compelling arbitration in race and gender discrimination cases as a preemptive forum to state enforced claims runs contra to the intended scheme Congress has provided in Title VII." (*Swenson* v. *Management Recruiters Intern., Inc., supra,* 858 F.2d at p. 1309, fn. 12.)

*Nicholson* v. *CPC Intern. Inc., supra,* 877 F.2d 221, agreed with *Swenson,* and held that an age discrimination claim based on the ADEA was not subject to compulsory arbitration by the Act.

■ Although lower federal court opinions on federal questions are not binding on state courts, they are entitled to great weight. (See *Rohr Aircraft Corp.* v. *County of San Diego* (1959) 51 Cal.2d 759, 764 [336 P.2d 521]; 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 780.) Here, appellant is not seeking relief under ADEA or any other federal statute. His claims are solely under California law.[2] Since *Southland* and *Perry,* California courts have consistently held that enforcement of the instant or substantially similar arbitration clauses is governed by federal law. For example, courts have held that employees cannot avoid the clause on the grounds of state unconscionability or adhesion because, insofar as the Act controls claims by firms engaged in interstate commerce, federal law controls. (See, e.g., *Downs* v. *Prudential-Bache Securities, Inc.* (1988) 202 Cal.App.3d 616 [248 Cal.Rptr. 734]; *Heily* v. *Superior Court* (1988) 202 Cal.App.3d 255 [248 Cal.Rptr. 673]; *Thomas* v. *Perry* (1988) 200 Cal.App.3d 510 [246 Cal.Rptr. 156].) ■ Although the question of actual formation of the contract is governed by state law, once it is established that the parties agreed to arbitrate, "the [arbitration] clause plainly covers disputes arising out of termination of employment." (*Chan* v. *Drexel Burnham Lambert, Inc.*

---

[2] At oral argument, appellant reaffirmed that he was not seeking relief under the ADEA, but only under state law.

(1986) 178 Cal.App.3d 632, 639-640 [223 Cal.Rptr. 838].) In light of the foregoing, we conclude appellant has not established an exception to the arbitration agreement.

■ Appellant claims respondents waived their right to arbitration by instituting discovery via the judicial process. A month before filing their petition to arbitrate, respondents' attorney by letter reiterated respondents' position that arbitration was mandatory and urged appellant to comply. The letter stated that respondents were initiating discovery (noticing appellant's deposition) while awaiting appellant's response "because of the stringent time constraints imposed under the fast track rules." The attorney expressed hope that the arbitration issue would be resolved prior to the time appellant was required to respond, but "in any event, neither this letter nor the enclosed Notices should be deemed a waiver of our clients' position that this matter should be resolved through arbitration."

Two weeks later appellant noticed the deposition of a nonparty witness. Respondents sought a protective order directing that it be held at a later date because their attorney was unable to appear at the deposition and appellant's attorney refused to continue it voluntarily. The deponent himself and his attorney were willing to continue it. The order was granted.

Although arbitration may be waived, the party asserting such waiver bears a "heavy" burden of proof which "is not to be lightly inferred," given that arbitration is highly favored. (*Keating* v. *Superior Court* (1982) 31 Cal.3d 584, 604-605 [183 Cal.Rptr. 360, 645 P.2d 1192].) "Waiver does not occur by mere participation in litigation; there must be 'judicial *litigation* of the merits of arbitrable issues' [citation] . . . ." (*Id.*, at p. 605.) Simple notice of depositions or obtaining a protective order necessitated by one party's lack of cooperation does not rise to judicial litigation on the merits, particularly in view of respondents' express disclaimer of waiver. (See *id.*, at pp. 606, 608.)

Affirmed.

Low, P. J., and King, J., concurred.

Appellant's petition for review by the Supreme Court was denied June 20, 1990. Mosk, J., was of the opinion that the petition should be granted.