[No. G027561. Fourth Dist., Div. Three. June 28, 2002.]

NED SANDERS et al., Plaintiffs and Respondents, v.
KINKO'S, INC., Defendant and Appellant.

## COUNSEL

Akin, Gump, Strauss, Hauer & Feld, Paul J. Coady and Brian F. Van Vleck for Defendant and Appellant.

Dostart Clapp & Coveney, James F. Clapp and Marita Murphy Lauinger for Plaintiffs and Respondents.

## OPINION

**RYLAARSDAM, J.**—Defendant Kinko's, Inc., appeals from an order of the superior court that denied, without prejudice, its motions to stay this lawsuit and to compel arbitration of the claims asserted by one of the named plaintiffs pending resolution of class action certification issues. The primary question presented is whether the Federal Arbitration Act (9 U.S.C. § 1 et seq. (FAA)) precludes a state court from determining the class certification issues before compelling enforcement of an arbitration agreement covered by it. We conclude the FAA does not preempt the procedure employed in this case and affirm the trial court's order.

### FACTS

Plaintiffs Ned Sanders and Patricia Lake, on behalf of themselves and "all current and former store management employees of defendant in California," sued defendant for damages and injunctive relief. The complaint alleged plaintiffs spent much of their time at work performing nonexempt tasks, but defendant improperly classified them as exempt management employees. As a result, defendant violated state labor laws and administrative wage orders by refusing to pay plaintiffs overtime compensation when they worked over eight hours on one day or 40 hours in a week.

Defendant responded by filing a petition to compel arbitration of plaintiff Lake's claims and a motion to stay this lawsuit until completion of that

arbitration. In support of these requests, defendant attached a copy of a signed "Co-worker Agreement" which, in part, stated Lake and defendant agreed "any and all disputes," including those "relating to wages or other compensation due, . . . or statutory claims . . . under federal, state, local, or governmental law, statute, ordinance, rule, or regulation," "shall be submitted to final and binding arbitration." The agreement also provided, "[a]rbitration under this section may be compelled and enforced according to the Federal Arbitration Act (9 U.S.C. 1 et seq.) and shall be conducted in accordance with the Kinko's Arbitration Procedure (KAP) . . . ." Defendant submitted a copy of the KAP which, in part, provided an arbitration "shall be conducted in accordance with the National Rules for Arbitration of Employment Disputes of the American Arbitration Association . . . ."

Plaintiffs filed opposition to defendant's requests. While "[i]n principle, plaintiffs [did] not oppose arbitration of the class claims," they argued "defendant's petition is premature." Plaintiffs claimed that, "before referring the matter to arbitration, the Court first should decide whether the matter should be certified as a class action."

The trial court agreed with plaintiffs. It denied the petition to compel arbitration and motion to stay the lawsuit "without prejudice," declaring "it is best to take care of class certification issues before turning to the question of which/whose claims are subject to arbitration under the FAA." The court "direct[ed] the parties to proceed forthwith toward a class certification hearing," and noted it "expect[ed] issues pertaining to the arbitration clause to be addressed as part of the class certification analysis." It also ordered the parties "to provide information regarding the general number of signed arbitration agreements among putative class members as compared to the total and to provide analysis as to whether the non-signators can be 'forced' to arbitrate or opt out or whether there should be sub-classes, two different classes, etc."

## DISCUSSION

### *Appealability of the Trial Court's Order*

■ Plaintiffs contend the appeal should be dismissed because the trial court's order denying the petition to compel arbitration *without prejudice* is not an appealable ruling. We disagree.

Code of Civil Procedure section 1294, subdivision (a) allows "[a]n aggrieved party" to appeal from "[a]n order dismissing or denying a petition to compel arbitration." The trial court's ruling, while not foreclosing the possibility of arbitration altogether, did have the effect of staying any arbitration

until after the class certification issues are resolved. *Henry v. Alcove Investment, Inc.* (1991) 233 Cal.App.3d 94 [284 Cal.Rptr. 255] allowed an appeal from an order staying arbitration. (*Id.* at pp. 98-100.) The appellate court noted that, since arbitration is intended to provide a less expensive and quicker means of resolving disputes, "an order staying arbitration is the functional equivalent of an order refusing to compel arbitration." (*Id.* at p. 99.)

This case presents a similar situation. If defendant is correct in asserting the trial court erred by not immediately ordering plaintiff Lake's dispute arbitrated while staying the remainder of the lawsuit, then its ruling, even if without prejudice until after completion of the class certification process, effectively defeated the benefits provided by the arbitration agreement. Thus, the order is appealable.

*The Denial of Defendant's Petition to Compel Arbitration*

 As discussed above, while the court technically "denied" defendant's petition to compel immediate arbitration of plaintiff Lake's claims, by making its ruling "without prejudice," the court effectively stayed the arbitration request until it resolved the class certification issues. In addition, the court directed the parties to consider the scope and effect of the employment agreement's arbitration clause on the class certification question. It is now well established a California court may order classwide arbitration in appropriate cases. (*Keating v. Superior Court* (1982) 31 Cal.3d 584, 608-614 [183 Cal.Rptr. 360, 645 P.2d 1192], revd. on other grounds in *Southland Corp. v. Keating* (1984) 465 U.S. 1, 16 [104 S.Ct. 852, 861, 79 L.Ed.2d 1]; *Blue Cross of California v. Superior Court* (1998) 67 Cal.App.4th 42, 52 [78 Cal.Rptr.2d 779]; *Izzi v. Mesquite Country Club* (1986) 186 Cal.App.3d 1309, 1321-1322 [231 Cal.Rptr. 315]; *Lewis v. Prudential-Bache Securities, Inc.* (1986) 179 Cal.App.3d 935, 945-946 [225 Cal.Rptr. 69].)

 Defendant, noting no dispute exists concerning the existence, validity, or applicability of an arbitration agreement governed by the FAA, claims that, regardless of California arbitration law, section 4 of the FAA required the trial court to immediately order arbitration of plaintiff Lake's claims and to stay the remainder of the litigation. Contrary to defendant's claim, the trial court did not deny arbitration altogether. The real issue presented here is whether the FAA preempts state procedural law relating to arbitration agreements. We conclude the answer is no.

Section 2 of the FAA provides, "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a

controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." (9 U.S.C. § 2.) The United States Supreme Court has declared this section creates a body of federal substantive law, applicable in both federal and state courts, requiring that arbitration agreements be honored. (*Perry v. Thomas* (1987) 482 U.S. 483, 489 [107 S.Ct. 2520, 2525, 96 L.Ed.2d 426]; *Southland Corp. v. Keating, supra,* 465 U.S. at pp. 11-12 [104 S.Ct. at pp. 858-859]; *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.* (1983) 460 U.S. 1, 24 [103 S.Ct. 927, 941, 74 L.Ed.2d 765].)

■ However, "[t]he FAA contains no express pre-emptive provision, nor does it reflect a congressional intent to occupy the entire field of arbitration." (*Volt Info. Sciences v. Leland Stanford Jr. U.* (1989) 489 U.S. 468, 477 [109 S.Ct. 1248, 1254, 103 L.Ed.2d 488].) Cases have recognized the FAA only extends to state law contract principles applying solely to arbitration agreements; "[t]hus, generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening [9 United States Code] § 2. [Citations.]" (*Doctor's Associates, Inc. v. Casarotto* (1996) 517 U.S. 681, 687 [116 S.Ct. 1652, 1656, 134 L.Ed.2d 902]; see also *Smith v. PacifiCare Behavioral Health of Cal., Inc.* (2001) 93 Cal.App.4th 139, 151 [113 Cal.Rptr.2d 140]; *The Energy Group, Inc. v. Liddington* (1987) 192 Cal.App.3d 1520, 1527 [238 Cal.Rptr. 202].)

■ Defendant contends section 4 of the FAA barred the trial court from staying arbitration while determining the issues relating to class certification, including the possibility of classwide arbitration of the litigation. Section 4 of the FAA establishes the procedure employed in federal court to compel arbitration under the FAA. It refers to a proceeding in a "United States district court which, save for [the arbitration] agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties . . . ." (9 U.S.C. § 4.)

Defendant and plaintiff Lake's agreement to arbitrate under the FAA does not mean the act's procedural sections apply in state court proceedings. In *Volt Info. Sciences v. Leland Stanford Jr. U., supra,* 489 U.S. 468, the Supreme Court expressly recognized, "[t]here is no federal policy favoring arbitration under a certain set of procedural rules; the federal policy is simply to ensure the enforceability, according to their terms, of private agreements to arbitrate." (*Id.* at p. 476 [109 S.Ct. at p. 1254].) In a footnote, the court also noted, "[w]hile we have held that the FAA's 'substantive'

provisions—§§ 1 and 2—are applicable in state as well as federal court, [citation], we have never held that §§ 3 and 4, which by their terms appear to apply only to proceedings in federal court, see 9 U.S.C. § 3 (referring to proceedings 'brought in any of the courts of the United States'); § 4 (referring to 'any United States district court'), are nonetheless applicable in state court. [Citations.]" (*Id.* at p. 477, fn. 6 [109 S.Ct. at p. 1255].) Thus, the court recognized a "state law may . . . be pre-empted to the extent that it actually conflicts with federal law—that is, to the extent that it 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.' [Citation.]" (*Id.* at p. 477; see also *Stirlen v. Supercuts, Inc.* (1997) 51 Cal.App.4th 1519, 1551 [60 Cal.Rptr.2d 138].)

In *Rosenthal v. Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394 [58 Cal.Rptr.2d 875, 926 P.2d 1061], the California Supreme Court held that questions relating to the existence of an arbitration agreement could be decided by the summary law and motion procedure authorized by state law (Code Civ. Proc., §§ 1281.2, 1290.2), rather than the jury trial procedure authorized under section 4, even though the arbitration agreement was subject to the FAA. "It is a 'general and unassailable proposition . . . that States may establish the rules of procedure governing litigation in their own courts,' even when the controversy is governed by substantive federal law. [Citation.] 'By the same token, however, where state courts entertain a federally created cause of action, the "federal right cannot be defeated by the forms of local practice." ' [Citation.] . . . At a minimum the state procedure must be neutral as between state and federal law claims. [Citation.] More exactingly, the state rule may be preempted if it would stand ' " 'as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.' " ' [Citation.] . . . [¶] Like other federal procedural rules, therefore, 'the procedural provisions of the [FAA] are not binding on state courts . . . *provided applicable state procedures do not defeat the rights granted by Congress.*' [Citation.] We think it plain the California procedures for a summary determination of the petition to compel arbitration serve to further, rather than defeat, the enforceability policy of the [FAA]." (*Rosenthal v. Great Western Fin. Securities Corp., supra,* at p. 409; see also *Volt Info. Sciences v. Leland Stanford Jr. U., supra,* 489 U.S. at pp. 478-479 [109 S.Ct. at p. 1255] [FAA did not preempt state statute permitting arbitration stay while litigation pending where parties' arbitration agreement provided for compliance with state arbitration rules].)

The trial court's ruling will not defeat the FAA's objectives. It directed a temporary stay on the arbitration proceeding to first resolve the class certification issues. (*Izzi v. Mesquite Country Club, supra,* 186 Cal.App.3d at p. 1322.) In so ruling, the court ordered the parties to "address[] as part of

the class certification analysis," "issues pertaining to the arbitration clause," including whether there should be subclasses, and if those class members who had not signed an arbitration agreement could be required to participate in an arbitration of the dispute. It also directed the parties to present evidence on the number of putative class members who signed similar arbitration agreements.

Citing that portion of the arbitration agreement stating, "[a]rbitration . . . may be compelled and enforced according the [FAA] (9 U.S.C. 1 et seq.)," defendant argues the FAA's procedural requirements, as well as its substantive provisions, apply hear. In *Volt Info. Sciences v. Leland Stanford Jr. U., supra,* 489 U.S. 468, the United States Supreme Court upheld a California state court order staying arbitration pending the resolution of a related lawsuit as allowed under Code of Civil Procedure section 1281.2, subdivision (c) because the parties' contract contained a choice of law provision applying California law. (*Volt,* at pp. 470, 478-479 [109 S.Ct. at pp. 1251, 1255].) But the present agreement's reference to enforcement under the FAA does not clearly reflect an intent to apply both its substantive and procedural aspects. This conclusion is buttressed by defendant's reliance, both in the trial court and on appeal, on the procedures for compelling arbitration established by the California Code of Civil Procedure.

Finally, the use of a classwide arbitration where the arbitration agreement is governed by the FAA was recently upheld in *Blue Cross of California v. Superior Court, supra,* 67 Cal.App.4th 42. After an extensive discussion of the FAA's history and purpose, plus its application in federal courts, the Second District held as follows: "[W]e conclude section 4 of the act does not apply in state courts to bar in all cases classwide arbitration. . . . [E]ven if it did apply, the United States Supreme Court has never held that the language of section 4 . . . means that no classwide arbitration can occur unless the parties have expressly so provided. . . . [The FAA's] purpose was to abolish antiarbitration laws and to make agreements to arbitrate specifically enforceable. . . . [W]e believe the language 'in accordance with the terms of the agreement' (9 U.S.C. § 4) means in accordance with the agreement to arbitrate. [Finally], [while] under federal . . . cases . . . there is no authority for classwide arbitration . . . state law authorizes classwide arbitration. In the absence of an express agreement *not* to proceed to arbitration on a classwide basis, ordering the parties to arbitrate class claims as authorized by state law does not conflict with their contractual arrangement." (*Blue Cross of California v. Superior Court, supra,* 67 Cal.App.4th at pp. 63-64.)

While the arbitration agreement refers to "disputes which arise between [Lake] and [defendant], its officers, directors, employees, or agents," nothing in the agreement precludes these parties from resolving their dispute as

part of a classwide arbitration. In *Lewis v. Prudential-Bache Securities, Inc., supra,* 179 Cal.App.3d 935, the appellate court recognized the propriety of a classwide arbitration in a case between investors and a securities brokerage over the latter's handling of the investors' margin accounts. The agreements signed by the investors contained an arbitration agreement referring to controversies " 'relating to my account, to transactions with or for me or to this Agreement or the breach thereof . . . .' " (*Id.* at p. 939.) Given the nature of the issue presented in this case, classwide arbitration would enhance the benefits of the alternative dispute resolution process by eliminating the need for numerous arbitrations to decide the same issue in individual cases.

As a caveat, we want to clarify that we are not deciding how the trial court must decide the question of classwide arbitration. That issue is beyond the scope of this appeal.

## DISPOSITION

The order is affirmed. Respondents shall recover their costs on appeal.

Sills, P. J., and Moore, J., concurred.