Filed 12/21/17 (unmodified opn. attached)

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| KALETHIA LAWSON, | D071279 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. 37-2016-00005578-CU-OE-CTL) |
| ZB, N.A. et al., | |
| Defendants and Appellants. | |
| ZB, N.A. et al., | D071376 |
| Petitioners, | |
| v. | ORDER MODIFYING OPINION |
| THE SUPERIOR COURT OF SAN DIEGO COUNTY, | CHANGE IN JUDGMENT |
| Respondent; | |
| KALETHIA LAWSON, | |
| Real Party in Interest. | |

THE COURT:

It is ordered that the opinion filed herein on December 19, 2017, be modified as follows:

On page 24, the last sentence under the heading Disposition should be deleted and a new sentence added so that the sentence now reads:

Each party to bear its own costs on appeal.

This modification changes the judgment. In all other respects the opinion remains the same.

BENKE, Acting P. J.

Copies to: All parties

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| KALETHIA LAWSON,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ZB, N.A. et al.,<br><br>    Defendants and Appellants. | D071279<br><br><br><br>(Super. Ct. No. 37-2016-00005578-CU-OE-CTL) |
| ZB, N.A. et al.,<br><br>    Petitioners,<br><br>    v.<br><br>THE SUPERIOR COURT OF SAN DIEGO COUNTY,<br><br>    Respondent;<br><br>KALETHIA LAWSON,<br><br>    Real Party in Interest. | D071376 |

APPEAL from a judgment of the Superior Court of San Diego County, Joel M. Pressman, Judge, and petition for writ of mandate. Appeal dismissed; petition granted.

Rutan & Tucker, James L. Morris and Brian C. Sinclair, for Defendants and Appellants.

Lawyers for Justice, Edwin Aiwazian, Arby Aiwazian and Joanna Ghosh, for Plaintiff and Respondent.

An order granting a motion to arbitrate is not appealable.  Here, the trial court granted appellant ZB, N.A.'s (ZB)[1] motion to arbitrate respondent Kalethia Lawson's wage and hour claim, which was brought under the provisions of the Private Attorneys General Act (the PAGA), Labor Code[2] section 2698 et seq.  The fact Lawson's PAGA claim, of necessity, included not only Labor Code violations committed with respect to her employment, but violations with respect to other employees, and that the arbitration ordered by the trial court included those violations, does not alter the fact the trial court ordered that Lawson's claim be arbitrated.  Hence, we have no appellate jurisdiction over the trial court's order compelling arbitration.

---

[1]     All references to ZB include defendant and appellant Zions Bancorporation.

[2]     All further statutory references are to the Labor Code, unless otherwise indicated.

However, apparently recognizing the potential defect in its appeal, shortly after ZB filed its notice of appeal, ZB filed a petition for a writ of mandate challenging the trial court's order. We thereafter ordered that the appeal and petition be considered together and issued an order to show cause. By separate order we have now consolidated the appeal and the writ proceeding and reach the merits of ZB's contentions with respect to the trial court's order in our disposition of ZB's petition for extraordinary relief.

In our disposition on the merits, we find the trial court erred in bifurcating the underpaid wages portion of Lawson's PAGA claim and ordering arbitration of that portion of the claim. Accordingly, we issue a writ directing the trial court to vacate its order bifurcating and compelling arbitration of the underpaid wages portion of Lawson's PAGA claim.

FACTUAL AND PROCEDURAL BACKGROUND

According to the allegations of her complaint Lawson began working for California Bank & Trust (CBT) as an hourly employee in 2013. CBT is a wholly owned subsidiary of ZB. In February 2016, Lawson filed a complaint against CBT and ZB, in which she alleged that CBT and ZB violated a host of labor laws and regulations including required: overtime compensation, meal and rest periods, minimum wages, payment upon discharge or resignation, timely wage payments, accurate age statements, payroll records, and reimbursement for work-related expenses. Lawson alleged she was acting as a representative under PAGA and was entitled to recover from the defendant the

3

penalties imposed under section 558 subdivisions (a)(1) and (a)(2), including in particular underpaid wages owed to her and other CBT employees.[3]

In response to Lawson's complaint, and relying on an arbitration provision in her employment agreement, ZB filed a motion to compel Lawson to arbitrate the underpaid wages she asserted she, *as an individual*, was owed. ZB noted that Lawson had waived the right to bring either a class action or representative action against it. ZB argued that

---

[3] Section 558 provides: "(a) Any employer or other person acting on behalf of an employer who violates, or causes to be violated, a section of this chapter or any provision regulating hours and days of work in any order of the Industrial Welfare Commission shall be subject to a civil penalty as follows:

"(1) For any initial violation, fifty dollars ($50) for each underpaid employee for each pay period for which the employee was underpaid in addition to an amount sufficient to recover underpaid wages.

"(2) For each subsequent violation, one hundred dollars ($100) for each underpaid employee for each pay period for which the employee was underpaid in addition to an amount sufficient to recover underpaid wages.

"(3) Wages recovered pursuant to this section shall be paid to the affected employee.

"(b) If upon inspection or investigation the Labor Commissioner determines that a person had paid or caused to be paid a wage for overtime work in violation of any provision of this chapter, any provision regulating hours and days of work in any order of the Industrial Welfare Commission, or any applicable local overtime law, the Labor Commissioner may issue a citation. The procedures for issuing, contesting, and enforcing judgments for citations or civil penalties issued by the Labor Commissioner for a violation of this chapter shall be the same as those set out in Section 1197.1.

"(c) In a jurisdiction where a local entity has the legal authority to issue a citation against an employer for a violation of any applicable local overtime law, the Labor Commissioner, pursuant to a request from the local entity, may issue a citation against an employer for a violation of any applicable local overtime law if the local entity has not cited the employer for the same violation. If the Labor Commissioner issues a citation, the local entity shall not cite the employer for the same violation."

"(d) The civil penalties provided for in this section are in addition to any other civil or criminal penalty provided by law.

"(e) This section does not change the applicability of local overtime wage laws to any entity."

in light of that waiver, in *Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348, 387–388 (*Iskanian*), our Supreme Court prevented her from asserting lost wage claims on behalf of other CBT employees. ZB did not ask the trial court to order arbitration of the specific $50 and $100 amounts set forth in section 558 subdivisions (a)(1) and (a)(2), as part of the civil penalties the statute imposes for violations of the Labor Code and orders of the Industrial Welfare Commission. The trial court granted ZB's motion. The trial court bifurcated Lawson's underpaid wage claims from her claim to the specific $50 and $100 amounts imposed by section 558. However, because Lawson was acting as a PAGA representative, the trial court ordered that the underpaid wage portion of her claim would be arbitrated as a representative claim. The trial court's order states in pertinent part: "[T]he Court bifurcates this issue of unpaid wages and premium wages per California Labor Code section 558 against Defendants and compels that issue to arbitration. This is a representative action. PAGA, by its very nature, is a representative statute. Therefore, the court sends the claim under Labor Code Section 558 to arbitration as a representative action."

ZB filed a timely notice of appeal, as well as a petition for a writ of mandate.

DISCUSSION

ZB's Appeal

I.

Code of Civil Procedure section 1294 provides in pertinent part: "An aggrieved party may appeal from: (a) An order *dismissing or denying* a petition to compel arbitration." (Italics added.) The right to appeal is solely statutory and no statute permits

5

an appeal from an order compelling arbitration. (*Porter v. United Services Automobile Assn.* (2001) 90 Cal.App.4th 838, 839–840 [appeal wholly statutory] (*Porter*); *Abramson v. Juniper Networks, Inc.* (2004) 115 Cal.App.4th 638, 648–649; *Gordon v. G.R.O.U.P., Inc.* (1996) 49 Cal.App.4th 998, 1004, fn. 8. [no appeal from order granting arbitration].)[4]

We of course agree that when an order delays or otherwise interferes with arbitration, it is the functional equivalent of an order denying arbitration and appealable under section 1294, subdivision (a). (See *Sanders v. Kinko* (2002) 99 Cal.App.4th 1106, 1109-1110; *Porter, supra*, 90 Cal.App.4th at p. 840; *Henry v. Alcove Investment, Inc.* (1991) 233 Cal.App.3d 94, 99.) Here, admittedly, the scope of the arbitration ordered by the trial court is broader than ZB requested and arguably frustrated the purposes of arbitration. (See *AT&T Mobility LLC v. Concepcion* (2011) 563 U.S. 333, 346 (*Concepcion*).) Nonetheless, we are not willing to agree that an order, which on its face *compels* arbitration, albeit an arbitration which is so broad that it may undermine the benefits usually provided by arbitral forums, may be treated as an order which, as a practical matter, *denies* arbitration.

---

[4]    The rationale for this disparate treatment of orders denying motions to compel and orders granting such motions is fairly straightforward:  the utility and efficiency of arbitration would be entirely lost if a litigant attempting to enforce an arbitration provision were required to litigate a claim on the merits in a judicial forum before challenging an improper order denying a motion to compel; conversely if, in general, orders compelling arbitration were appealable, the prompt resolution of claims by way of arbitration would be substantially undermined. (*Wheeler v. St. Joseph Hospital* (1976) 63 Cal.App.3d 345, 353 (*Wheeler*).)

Our unwillingness to find appellate jurisdiction here is, in some measure, informed by ZB's petition for a writ of mandate by which it raises the same arguments on the merits it asserts on appeal and our conclusion those issues are the appropriate subject of writ review. "California courts had held that writ review of orders compelling arbitration is proper in at least two circumstances: (1) if the matters ordered arbitrated fall clearly outside the scope of the arbitration agreement or (2) if the arbitration would appear to be unduly time consuming or expensive. [Citations.]" (*Zembsch v. Superior Court* (2006) 146 Cal.App.4th 153, 160; see also *Wheeler, supra*, 63 Cal.App.3d at p. 353.) As we discuss more fully below, in bringing her PAGA claim Lawson was acting on behalf of the state and the state has not agreed to arbitrate its claim. Hence, it is clear Lawson's claim is outside the scope of the arbitration agreement she signed and that writ relief is appropriate. In considering whether extraordinary relief is appropriate, we must recognize also the express public interest, which we discuss more fully below, embraced in the PAGA and the consequent public interest in assuring that PAGA claims are enforced under the circumstances contemplated by the Legislature. (See *Babb v. Superior Court* (1971) 3 Cal.3d 841, 851.)

## II.

### A. PAGA

The court summarized the Legislature's enactment of PAGA in *Arias v. Superior Court* (2009) 46 Cal.4th 969, 980–981 (*Arias*): "In September 2003, the Legislature enacted the Labor Code Private Attorneys General Act of 2004 [citations]. The Legislature declared that adequate financing of labor law enforcement was necessary to

7

achieve maximum compliance with state labor laws, that staffing levels for labor law enforcement agencies had declined and were unlikely to keep pace with the future growth of the labor market, and that it was therefore in the public interest to allow aggrieved employees, acting as private attorneys general, to recover civil penalties for Labor Code violations, with the understanding that labor law enforcement agencies were to retain primacy over private enforcement efforts. (Stats. 2003, ch. 906, § 1.)

"Under this legislation, an 'aggrieved employee' may bring a civil action personally and on behalf of other current or former employees to recover *civil penalties* for Labor Code violations. (Lab. Code, § 2699, subd. (a).) Of the civil penalties recovered, 75 percent goes to the Labor and Workforce Development Agency, leaving the remaining 25 percent for the 'aggrieved employees.' (Lab. Code, § 2699, subd. (i).)

"Before bringing a civil action for statutory penalties, an employee must comply with Labor Code section 2699.3. (Lab. Code, § 2699, subd. (a).) That statute requires the employee to give written notice of the alleged Labor Code violation to both the employer and the Labor and Workforce Development Agency, and the notice must describe facts and theories supporting the violation. (*Id.*, § 2699.3, subd. (a).) If the agency notifies the employee and the employer that it does not intend to investigate . . . , or if the agency fails to respond within 33 days, the employee may then bring a civil action against the employer. (*Id.*, § 2699.3, subd. (a)(2)(A).) If the agency decides to investigate, it then has 120 days to do so. If the agency decides not to issue a citation, or does not issue a citation within 158 days after the postmark date of the employee's notice, the employee may

8

commence a civil action. (*Id.*, § 2699.3, subd. (a)(2)(B).)" (*Arias, supra*, 46 Cal.4th at pp. 980–981, fn. omitted.)

In *Arias*, the defendants argued that due process required that PAGA actions be brought as class actions because otherwise a defendant would be subject to lawsuits by multiple plaintiffs raising a common claim and none of them would be bound by a prior PAGA judgment in the defendant's favor. (*Arias, supra*, 46 Cal.4th at p. 985.) The Supreme Court rejected this due process argument and stated: "the judgment in [a PAGA representative] action is binding not only on the named employee plaintiff but also on government agencies and any aggrieved employee not a party to the proceeding." (*Ibid.*) Significantly, in reaching this conclusion the court described the legal characteristics of a PAGA representative action: "An employee plaintiff suing . . . under the [PAGA] does so as the proxy or agent of the state's labor law enforcement agencies. . . . In a lawsuit brought under the act, the employee plaintiff represents the same legal right and interest as state labor law enforcement agencies—namely, recovery of civil penalties that otherwise would have been assessed and collected by the Labor Workforce Development Agency. [Citations.]. . . . Because collateral estoppel applies not only against a party to the prior action in which the issue was determined, but also against those for whom the party acted as an agent or proxy [citations], a judgment in an employee's action under the act binds not only that employee but also the state labor law enforcement agencies.

"Because an aggrieved employee's action under the [PAGA] functions as a substitute for an action brought by the government itself, a judgment in that action binds all those, including nonparty aggrieved employees, who would be bound by a judgment

9

in an action brought by the government. The act authorizes a representative action only for the purpose of seeking statutory penalties for Labor Code violations (Lab. Code, § 2699, subds. (a), (g)), and an action to recover civil penalties 'is fundamentally a law enforcement action designed to protect the public and not to benefit private parties' [Citation.] When a government agency is authorized to bring an action on behalf of an individual or in the public interest, and a private person lacks an independent legal right to bring the action, a person who is not a party but who is represented by the agency is bound by the judgment as though the person were a party. (Rest.2d Judgments, § 41, subd. (1)(d), com. d, p. 397.) Accordingly, with respect to the recovery of civil penalties, nonparty employees as well as the government are bound by the judgment in an action brought under the act, and therefore defendants' due process concerns are to that extent unfounded." (*Arias, supra*, 46 Cal.4th at p. 986.)

B. *Thurman*

Following *Arias,* in *Thurman v. Bayshore Transit Management* (2012) 203 Cal.App.4th 1112 (*Thurman*), we considered the impact of the PAGA on a claim, like Lawson's, brought for alleged violations of section 558 subdivision (a). The defendant in *Thurman* argued the underpaid wages portions of relief provided by section 558 subdivisions (a)(1) and (a)(2) were severable from the $50 and $100 amounts imposed for each violation and those portions could not be collected in a PAGA action. (*Thurman,* at pp. 1144–1145.) We rejected the defendants' contention: "In our view, the language of section 558, subdivision (a) is more reasonably construed as providing a civil penalty that consists of *both* the $50 or $100 penalty amount *and* any underpaid wages,

10

with the underpaid wages going entirely to the affected employee or employees as an express exception to, the general rule that civil penalties recovered in a PAGA action are distributed 75 percent to the Labor and Workforce Development Agency (LWDA) and 25 percent to the aggrieved employees (§ 2699, subd. (i).)" (*Thurman,* at p. 1145.)  In doing so we relied on Supreme Court, Court of Appeal and federal district court cases, which in other contexts found that the underpaid wages provided for under section 558 are part of the $50 and $100 penalties set forth in the statute.  (*Thurman,* at pp. 1145–1147, citing *Reynolds v. Bement* (2005) 36 Cal. 4th 1075, 1087–1089 (*Reynolds*), *Jones v. Gregory* (2006) 137 Cal.App.4th 798, 809, fn. 11 (*Jones*), *Bradstreet v. Wong* (2008) 161 Cal.App.4th 1440, 1451 (*Bradstreet*), and *Yadira v. Fernandez* (N.D. Cal., June 14, 2011, No. C-08-05721 RMW) 2011 WL 2434043 (*Yadira*).  We stated:  "We agree with the *Yadira* court that the entire remedy provided by section 558, including the recovery of underpaid wages, is a civil penalty, as noted by the California Supreme Court in *Reynolds* and by the Courts of Appeal in *Jones* and *Bradstreet*. Defendants characterize the statement in *Reynolds* that section 558 provides a 'civil penalty, payable to the affected employee, equal to the amount of any underpaid wages' as dictum based solely on the text of section 558, without analysis. Even assuming that this is so, we conclude that it is a correct construction of section 558, subdivision (a), and note that statements of the California Supreme Court should be considered persuasive even if properly characterized as dictum.  [Citation.] The *Reynolds* court's reading of section 558 reflects that the plain meaning of the statute is that the civil penalty it specifies consists of *both* an assessment

11

of $50 for initial violations or $100 for subsequent violations *and* an amount sufficient to recover underpaid wages." (*Thurman,* at p. 1147.)

In directly rejecting the defendant's efforts to separate the assessments expressly denominated in section 558 from the underpaid wages provided by the statute in PAGA actions, we noted that in PAGA actions a plaintiff is acting on behalf of the state and that in an action brought by the state there was no question the state could recover both the denominated assessments and underpaid wages: "Because an aggrieved employee who brings a PAGA action sues 'as the proxy or agent of the state's labor law enforcement agencies' [citation], the logical extension of defendants' argument that wages cannot be recovered as a civil penalty is that the LWDA could not seek underpaid wages on behalf of employees under section 558. However, nothing in *Arias* suggests that the Legislature did not intend that the LWDA be able to recover 'underpaid wages' on behalf of employees under section 558 as part of a civil penalty for Labor Code and [Industrial Welfare Commission] order violations that result in underpayment of wages. The Legislature has authorized labor law enforcement agencies to prosecute actions for wages on behalf of employees elsewhere in the Labor Code. For example, under section 1193.6, the Department of Industrial Relations or DLSE may prosecute a civil action to recover unpaid wages on behalf of employees, with or without their consent. We conclude that the Legislature similarly authorized the LWDA to recover underpaid wages on behalf employees in the form of a civil penalty under section 558. Accordingly, an aggrieved employee acting as the LWDA's proxy or agent by bringing a PAGA action may likewise

12

recover underpaid wages as a civil penalty under section 558." (*Thurman, supra*, 203 Cal.App.4th at pp. 1147–1148.)

C. *Concepcion*

In *Concepcion, supra*, 563 U.S. 333, the court held that class actions were inconsistent with the fundamental nature of arbitration and imposed practical burdens which undermined the efficacy of arbitration. Hence, the court held class action waivers in arbitration agreements were enforceable under the Federal Arbitration Act (FAA) (9 U.S.C. § 1 et seq.), and any contrary state statutes or rules of law which interfered with the enforceability of those waivers were preempted by the FAA. (*Concepcion, supra*, 563 U.S. at pp. 351–352.) In concluding the arbitration of class claims is inconsistent with the nature of arbitration, the court found the procedures required for class actions deprived the parties of the informality which is the principal advantage of arbitration and posed great risks to defendants in that in arbitration the defendants have limited or no ability to challenge interim but nonetheless substantial errors in the class certification process or rulings on the merit. (*Concepcion, supra*, 563 U.S. at pp. 349–350.) "Arbitration is poorly suited to the higher stakes of class litigation. In litigation, a defendant may appeal a certification decision on an interlocutory basis and, if unsuccessful, may appeal from a final judgment as well. Questions of law are reviewed *de novo* and questions of fact for clear error. In contrast, [the FAA] allows a court to vacate an arbitral award *only* where the award 'was procured by corruption, fraud, or undue means'; 'there was evident partiality or corruption in the arbitrators'; 'the arbitrators were guilty of misconduct in refusing to postpone the hearing . . . or in refusing to hear

13

evidence pertinent and material to the controversy[,] or of any other misbehavior by which the rights of any party have been prejudiced'; or if the 'arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award . . . was not made.' The AAA rules do authorize judicial review of certification decisions, but this review is unlikely to have much effect given these limitations; review under [the FAA] focuses on misconduct rather than mistake." (*Ibid*.)

D.  *Iskanian*

Shortly after *Concepcion* was decided, in *Iskanian,* the court found that an employee's prior agreement to waive the right to bring a " 'representative action' " does not prevent an employee from bringing a PAGA action.  (*Iskanian, supra*, 59 Cal.4th at pp. 387–388.)  The court found that an employee's right to bring a PAGA claim was not waivable and that in preventing any waiver the PAGA did not conflict with and was not preempted by the FAA.  The court analogized a PAGA action to qui tam actions, in which a private party brings an action on behalf of a governmental agency.  "A PAGA representative action is therefore a type of *qui tam* action. 'Traditionally, the requirements for enforcement by a citizen in a qui tam action have been (1) that the statute exacts a penalty; (2) that part of the penalty be paid to the informer; and (3) that, in some way, the informer be authorized to bring suit to recover the penalty.'  [Citation.] The PAGA conforms to these traditional criteria, except that a portion of the penalty goes not only to the citizen bringing the suit but to all employees affected by the Labor Code violation. The government entity on whose behalf the plaintiff files suit is always the real party in interest in the suit. [Citation.]"  (*Id*. at p. 382.)

14

Given its fundamental nature as a means of enforcing claims which belong to the the state, the court found that the right to bring a PAGA claim was not limited by the FAA. "The FAA aims to promote arbitration of claims belonging to the private parties to an arbitration agreement. It does not aim to promote arbitration of claims belonging to a government agency, and that is no less true when such a claim is brought by a statutorily designated proxy for the agency as when the claim is brought by the agency itself. The fundamental character of the claim as a public enforcement action is the same in both instances. We conclude that California's public policy prohibiting waiver of PAGA claims, whose sole purpose is to vindicate the [Labor and Workforce Development] Agency's interest in enforcing the Labor Code, *does not interfere with the FAA's goal of promoting arbitration as a forum for private dispute resolution.*" (*Iskanian, supra*, 59 Cal.4th at p. 388 [italics added].)

The court in *Iskanian* was very cognizant of the United States Supreme Court's holding in *Concepcion*. Thus, the court in *Iskanian* took some pains to illustrate how a PAGA claim did not interfere with arbitration and hence was not preempted by the FAA. The court first set forth the critical distinction between *civil penalties* recoverable in a PAGA action and *victim specific* relief recoverable by individual employees. "The civil penalties recovered on behalf of the state under the PAGA are distinct from the statutory damages to which employees may be entitled in their individual capacities. Case law has clarified the distinction 'between a request for statutory penalties provided by the Labor Code for employer wage-and-hour violations, which were recoverable directly by employees well before the [PAGA] became part of the Labor Code, and a demand for

15

"civil penalties," previously enforceable only by the state's labor law enforcement agencies. An example of the former is section 203, which obligates an employer that willfully fails to pay wages due an employee who is discharged or quits to pay the employee, in addition to the unpaid wages, a penalty equal to the employee's daily wages for each day, not exceeding 30 days, that the wages are unpaid. [Citation.] Examples of the latter are section 225.5, which provides, in addition to any other penalty that may be assessed, an employer that unlawfully withholds wages in violation of certain specified provisions of the Labor Code is subject to a civil penalty in an enforcement action initiated by the Labor Commissioner in the sum of $100 per employee for the initial violation and $200 per employee for subsequent or willful violations, and section 256, which authorizes the Labor Commissioner to "impose a civil penalty in an amount not exceeding 30 days [*sic*] pay as waiting time under the terms of Section 203." ' [Citations.]" (*Iskanian, supra*, 59 Cal.4th at p. 381.)

The court then, in a later portion of its opinion, stated: "Our opinion today would not permit a state to circumvent the FAA by, for example, deputizing employee A to bring a suit for the individual damages claims of employees B, C, and D. This pursuit of victim-specific relief by a party to an arbitration agreement on behalf of other parties to an arbitration agreement would be tantamount to a private class action, whatever the designation given by the Legislature. Under *Concepcion*, such an action could not be maintained in the face of a class waiver. Here, importantly, a PAGA litigant's status as 'the proxy or agent' of the state [citation] is not merely semantic; it reflects a PAGA litigant's substantive role in enforcing our labor laws on behalf of state law enforcement

16

agencies. Our FAA holding applies specifically to a state law rule barring predispute waiver of an employee's right to bring an action that can only be brought by the state or its representatives, where any resulting judgment is binding on the state and any monetary penalties largely go to state coffers." (*Iskanian, supra*, 59 Cal.4th at pp. 387–388.)

Following *Iskanian,* the court in *Williams v. Superior Court (Pinkerton)* (2015) 237 Cal.App.4th 642, 648–649 (*Williams*), rejected a defendant's attempt to compel arbitration of an employee's individual claim: "[A] single representative PAGA claim *cannot* be split into an arbitrable individual claim and a nonarbitrable representative claim . . . a PAGA claim may not be brought solely on the employee's behalf, but must be brought in a representative capacity. 'Because the PAGA claim *is not an individual claim*, it was not within the scope of [the employer's] request that individual claims be submitted to arbitration. . . . [Citation.] Here . . . petitioner 'does not bring the PAGA claim as an individual claim, but "as the proxy or agent of the state's labor law enforcement agencies." ' [Citations.]" (*Id.* at p. 649, citing *Reyes v. Macy's, Inc.* (2011) 202 Cal.App.4th 1119, 1124 (*Reyes*) [italics added].)

Recently, the court in *Lopez v. Friant* (2017) 15 Cal.App.5th 773, 780 (*Lopez*) consistent with the principles discussed in *Iskanian*, distinguished between the statutory damages individual employees may directly recover from employers under section 226 subdivision (e) for failure to provide an accurate pay stub as required by section 226 subdivision (a), and the civil penalties the Labor Commissioner and PAGA plaintiffs may separately recover for such conduct under section 226 subdivision (b). The court found

17

that the scienter required for recovery under section 226 subdivision (e) does not apply to the separate relief provided to the Labor Commissioner under section 226 subdivision (b); hence, the court held that scienter requirement has no application in a PAGA claim for violation of section 226 subdivision (a). (*Lopez,* at pp. 781-785.)

E. Analysis

1. Section 558 Claims are PAGA Claims

Section 2699 subdivision (a) provides: "Notwithstanding any other provision of law, any provision of this code that provides for a *civil penalty* to be assessed and collected by the Labor and Workforce Development Agency or any of its departments, divisions, commissions, boards, agencies, or employees, for a violation of this code, may, as an alternative, be recovered through a civil action brought by an aggrieved employee on behalf of himself or herself and other current or former employees pursuant to the procedures specified in Section 2699.3."

Section 558, by its terms and as we interpreted it in *Thurman*, expressly provides for *civil penalties* and hence claims under section 558, *including* claims for underpaid wages, are cognizable under the PAGA. As our holding in *Thurman* makes clear, the $50 and $100 assessments as well as the compensation for underpaid wages provided for by section 558 subdivisions (a) and (b) are, together, the *civil penalties* provided by the statute.

In this regard, we respectfully part company with the views recently expressed by our colleagues in the Fifth District in *Esparza v. KS Industries* (2027) 13 Cal.App.5th 1228 (*Esparza*). In *Esparza,* the plaintiff, like Lawson, alleged a PAGA claim against his

18

employer and sought civil penalties under section 558.  Relying on *Iskanian*, the trial court denied the employer's motion to arbitrate.  On appeal, the Court of Appeal reversed and remanded.  Like the trial court here, the Court of Appeal found the underpaid wages portion of a claim under section 558 is subject to arbitration.  (*Esparza,* at p. 1246.)   The court stated:  "Employee's attempt to recover unpaid wages under Labor Code section 558 is, for purposes of the Federal Arbitration Act, a private dispute arising out of his employment contract with KS Industries. In statutory terms, the wage claim is covered by '[a] written provision in . . . a contract . . . to settle by arbitration a controversy arising out of such contract.'  (9 U.S.C. § 2.) *The dispute over wages is a private dispute because, among other things, it could be pursued by Employee in his own right.* We recognize that private disputes can overlap with the claims that could be pursued by state labor law enforcement agencies. When there is overlap, the claims retain their private nature and continue to be covered by the Federal Arbitration Act. To hold otherwise would allow a rule of state law to erode or restrict the scope of the Federal Arbitration Act—a result that cannot withstand scrutiny under federal preemption doctrine. Therefore, we conclude preventing arbitration of a claim for unpaid wages would interfere with the Federal Arbitration Act's goal of promoting arbitration as a forum for private dispute resolution. (See *Iskanian, supra*, 59 Cal.4th at p. 389.)."  (*Ibid*. (italics added).)  Because the record was not clear that the plaintiff in Esparza was seeking underpaid wages under section 558, the court remanded so that the plaintiff could clarify the scope of his claims.  If the plaintiff was seeking unpaid wages, the court directed they be arbitrated; if, on remand,

19

the plaintiff waived any claim to unpaid wages under section 558, the court ordered that litigation of those limited claims proceed.  (*Esparza,* at p. 1247.)

The court in *Esparza* also found that in light of *Iskanian*, our opinion in *Thurman* was no longer an impediment to severance of underpaid wage claims brought under section 558.  (*Esparza, supra*, 13 Cal.App.4th at p. 1243.)

Our initial point of departure from *Esparza* is the opinion's apparent conclusion that the plaintiff could pursue relief under section 558 in his own right.  (*Esparza, supra*, 13 Cal.App.4th at p. 1246.)  The court in *Esparza* cited no authority to support this conclusion and the authority that has come to our attention has consistently found there is no private right of action under section 558.  (See *Robles v. Agreserves, Inc*., (2016 E.D. Cal.) 158 F.Supp. 3d 952, 1066; *Chang v. Biosuccess Biotech., Ltd.* (2014 C.D. 2014) 76 F.Supp.3d 1022, 1049.)  Rather, an individual may recover under section 558, only when the individual has satisfied the procedural requirements set forth in the PAGA and is acting in the place of and for the LWDA.  (*Robles,* at p. 1066; *Chang,* at p. 1049.)  In this regard section 558 is distinguishable from the wage penalties provided by section 203, and discussed in *Iskanian*; section 203, subdivision (b) expressly provides that "suit may be filed" for those penalties.  In general, where, as under section 558, there is no express right of private enforcement and instead a regulatory agency has expressly been given the right to enforce the statute, no private right of action will be implied.  (See *Vicko Ins. Services, Inc. v. Ohio Indem. Co.* (1999) 70 Cal.App.4th 55, 63–64.)

We also disagree with *Esparza's* treatment of our opinion in *Thurman*.  While we agree *Thurman* was decided before *Iskanian,* and that in *Thurman* we had no occasion to

20

address the preemption issues discussed in *Iskanian*, those circumstances in no sense undermine the continuing validity of our holding in *Thurman,* to wit: in enacting section 558, the Legislature intended the underpaid wages recoverable under the statute, as well as the $50 and $100 assessments provided by the statute, be treated as civil penalties and that as civil penalties, neither type of recovery is severable for purposes of applying the PAGA. (See *Thurman, supra*, 203 Cal.App.4th at pp. 1147–1148.) In *Thurman*, in interpreting the intent of our Legislature in enacting section 558, we plainly did not purport to consider the separate question of whether FAA preemption, which was only *later* set forth in *Concepcion,* barred enforcement of the statute under the qui tam procedures set forth in the PAGA. That separate preemption question was however answered in *Iskanian* in its discussion of the distinction between civil penalties, which can be enforced even when an employee is subject to a class waiver agreement and statutory damages, which are preempted by such an agreement. (See *Iskanian, supra*, 59 Cal.4th at p. 381.)

The court in *Iskanian* made it clear that the distinction between civil penalties and victim specific statutory damages hinges in large measure on whether, prior to enactment of the PAGA, they could only be recovered by way of regulatory enforcement or whether they supported a private right of action. (See *Iskanian, supra*, 59 Cal.4th at p. 381.) As we have seen, section 558 provides no private right of action and by its terms is only enforceable by the LWDA. (See *Robles v. Agreserves, Inc.*, *supra*, 158 F.Supp. 3d at p. 1066; *Chang v. Biosuccess Biotech., Ltd.*, *supra*, 76 F.Supp.3d at p. 1049.)

21

We of course recognize that in finding no FAA preemption, the court in *Iskanian* also relied on the fact the penalties it was considering were "largely" payable to the state. (*Iskanian, supra*, 59 Cal.4th at pp. 887–888.)  In *Iskanian,* 75 percent of the civil penalties were payable to the LWDA and 25 percent were payable to employees.  (*Id*. at p. 380; § 2699, subd. (i).)  Here, there is nothing in the record which suggests the predominate amounts recovered under section 558 will be in the form of underpaid wages payable to employees; indeed, we note that with respect to the meal break and rest break violations alleged by Lawson, while section 558 provides either a $50 or $100 assessment for each violation during a pay period, Lawson only alleges an underpaid wage loss of one hour's wages for each violation.  Thus, depending upon how many violations occurred during a pay period and the effected employees' rate of pay, it is quite possible that, at least as to the rest break and meal break allegations, the underpaid wage portion of any recovery will fall within the 25 percent range implicitly approved by the court in *Iskanian*.

In sum, because, prior to enactment of PAGA there was no private remedy under section 558 and because there is no basis upon which to conclude that recovery under the statute will largely go to individual employees, at this point, as in *Iskanian*, FAA preemption does not apply.[5]

2.  The Trial Court Erred

---

[5]     Our conclusion with respect to preemption is without prejudice to ZB's right to show, on a fuller factual record, that preemption should apply here.

Because claims under section 558 are indivisible claims for civil penalties, the trial court's order bifurcating Lawson's PAGA claim between the denominated assessments and underpaid wages was erroneous, as was its further order directing that the underpaid wages be arbitrated as a representative action. As we have discussed, the courts in *Iskanian, Williams* and *Reyes* have held that an individual employee's prior arbitration agreement is no impediment to the employee's right to bring a distinct civil enforcement action under the PAGA, notwithstanding the fact that the employee may have waived his or her right to bring class or representative claims against his or her employer. As those cases make clear, in bringing a PAGA action an employee is not acting on his or her own behalf, but on behalf of the state and the state is not bound by the employee's prior agreement, including any waiver of his or right to bring a representative action.

PAGA claims are not only outside the scope of a plaintiff's prior arbitration agreement under the terms of the statute itself and *Iskanian*, arbitration of such a representative claim also appears to run afoul of the principles set forth in *Concepcion*. In particular, arbitration of a PAGA claim, which as the trial court noted, is always a representative claim, would deprive defendants of the ability to challenge rulings on the merits and de novo, posing for defendants considerable and unexpected risks. (See *Concepcion, supra*, 563 U.S. at pp. 350–352.)

Accordingly, we must direct that the trial court vacate its order and enter a new order denying Z.B.'s motion to arbitrate. Contrary to ZB's contention we have no power to direct that the trial court modify its order so that Lawson be compelled to arbitrate an individual underpaid wage claim. As the cases emphasize, under the PAGA Lawson is

23

acting as a representative of the state, which has not agreed to arbitrate its claim for civil penalties.  (*Williams, supra*, 237 Cal.App.4th at p. 649, citing *Reyes, supra*, 202 Cal.App.4th at p. 1124.)

## DISPOSITION

The appeal is dismissed.  Let a peremptory writ of mandate issue commanding the trial court to vacate its order bifurcating Lawson's claims and ordering a portion of those claims be arbitrated and enter a new order denying Z.B.'s motion to arbitrate. Respondent to recover costs on appeal.

BENKE, Acting P. J.

WE CONCUR:

HUFFMAN, J.

HALLER, J.